# United States Court of Appeals
## *for the*
# Fifth Circuit

Case No. 23-20191

HILDA M. CASTANEDO ESCALON; ESTATE OF HILDA CASTANEDO; ESTATE OF EMMA DIAZ,

*Plaintiffs-Appellants,*

– v. –

TRAFIGURA TRADING L.L.C.; TRAFIGURA GROUP PTE LIMITED; TRAFIGURA PTE LIMITED,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS (HOUSTON), CASE NO. 4:21-CV-659 HONORABLE ALFRED H. BENNETT, U.S. DISTRICT JUDGE

**REPLY BRIEF FOR PLAINTIFFS-APPELLANTS HILDA M. CASTANEDO ESCALON, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF HILDA CASTANEDO AND THE ESTATE OF EMMA DIAZ**

JARED R. BUTCHER
DAVID A. BARON
MELVIN WHITE
BERLINER CORCORAN & ROWE LLP
*Attorneys for Plaintiffs-Appellants*
1101 17th Street, NW, Suite 1100
Washington, DC 20036
(202) 293-5555
jbutcher@bcrlaw.com
dbaron@bcrlaw.com
mwhite@bcrlaw.com

# Table of Contents

Table of Contents ................................................................................................ i

Table of Authorities ........................................................................................... ii

Introduction ........................................................................................................1

Argument............................................................................................................4

I.   Neither *Glen* Nor Any Other Court Of Appeals' Decision Addresses Whether A Personal Representative Of An Estate May Bring A Decedent's Claim Under The Helms-Burton Act......................................................................................4

II.   The District Court Erroneously Barred The Personal Representative From Litigating Emma's And Hilda's Claims Even Though She Was Authorized To Do So By The Florida Probate Court And Florida Probate Law......................................6

III.   The District Court Also Erred By Disregarding The Fact That The Decedents Timely Acquired Their Claims And Holding Instead That Their Estates Had A Different And Untimely Acquisition Date...............................................................9

   A.   Under Florida probate law, estates cannot acquire property as their own ....9

   B.   Title III's purpose is to provide remedies to the Cuban Government's victims, not to protect its business partners..........................................................11

   C.   Congress intended to compensate Castro's victims ...................................12

Conclusion ........................................................................................................13

Certificate of Service .......................................................................................14

Certificate of Compliance ................................................................................15

# Table of Authorities

**CASES**

*Depriest v. Greeson*,
   213 So. 3d 1022, 1026 (Fla. Dist. Ct. App. 2017) ............................................... 11
*Garcia-Bengochea v. Carnival Corp.*
   57 F.4th 916, 932 (11th Cir.) .......................................................................... 4, 12
*Glen v. Am. Airlines, Inc.*,
   7 F.4th 331 (5th Cir. 2021) ......................................................................... 4, 5, 6
*Rice v. Green*,
   941 So.2d 1230 (Fla. Dist. Ct. App. 2006) ...................................................... 7, 8
*Serna v. Law Office of Joseph Onwuteaka, P.C.*,
   732 F.3d 440, 445 (5th Cir. 2013) ...................................................................... 14
*Sharps v. Sharps*,
   214 So. 2d 492 (Fla. Dist. Ct. App. 1968) .......................................................... 11
*Wilkes v. United States*,
   No. 3:97-CV-1317-J-21A, 2000 WL 1367885 (M.D. Fla. Oct. 18, 2000) .......... 10

**STATUTES**

22 U.S.C. § 6081 .......................................................................................................... 13
22 U.S.C. § 6081(11) ................................................................................................... 13
22 U.S.C. § 6082 .......................................................................................................... 13
Fla. Stat. § 731.201(14) ............................................................................................... 10
Fla. Stat. § 731.201(32) ............................................................................................... 10
Fla. Stat. § 732.514 ........................................................................................................ 8
Fla. Stat. § 733.103 ........................................................................................................ 8
Fla. Stat. § 733.612(20) ............................................................................................. 1, 6
Fla. Stat. § 733.612(5) ................................................................................................. 10
Fla. Stat. §§ 733.01-733.903 ......................................................................................... 9

**Introduction**

The brief of Defendants-Appellants ("Trafigura") demonstrates the district court's two fundamental errors warranting reversal. First, Trafigura acknowledges that the Personal Representative was appointed by a Florida probate court (Appellees' Br. at 8), meaning she was and is authorized to prosecute the claims of the decedents Emma Diaz ("Emma") and Hilda Castanedo ("Hilda"). *See* Fla. Stat. § 733.612(20). The district court, however, ignored her authorization and barred her from doing so based on the flawed rationale that Emma's and Hilda's claims automatically vested in their heir at death and could not be part of their Estates.

It was error to equate the vesting of rights under a will—because the testator is dead and can no longer change her mind—with the transfer of ownership of the decedent's property. As a matter of Florida state law, ownership of Emma's and Hilda's claims remains subject to the probate process authorized by the state probate court. *See* Appellants' Br. at 22-25. There is simply no cogent defense of the district court's contrary holding, which improperly overrules the Florida probate court and disregards Florida probate law. Trafigura's attempt to manufacture support only highlights the core error: A federal district court should refrain from interfering with a state court's application of state probate law.

The second fundamental error lies in the district court's alternative rationale that, if Emma's and Hilda's claims did not vest in their heir, then ownership of the

1

claims must have been acquired by the Estates, which must also be barred from bringing those claims. Naturally, Trafigura agrees with this rationale too, yet their brief is bereft of even a single Florida authority holding that an estate as separate from the decedent is capable of acquiring ownership of a decedent's claim. *See* Appellees' Br. at 25-27. It is not.

Lacking any sustainable defense of the decision below, Trafigura resorts to hyperbolic accusations that the Personal Representative is supposedly engaging in an "end run" or "work around." But neither the district court nor the Florida probate court made any findings of impropriety. Moreover, these baseless accusations are remarkably tone deaf. The Personal Representative is herself a Cuban refugee trying to obtain some measure of justice after the Castro regime's unconscionable deprivation of her family's life and livelihood. Trafigura would like nothing better than to bury the claims along with Emma and Hilda—no matter how much distortion of the Helms-Burton Act ("HBA") is required—because this will allow Trafigura to continue to enrich themselves and protect their multi-billion-dollar mining partnership with a state sponsor of terrorism.[1] Trafigura only cares about the process if they can manipulate it to shield their unlawful activities.

---

[1] See State Sponsors of Terrorism, U.S. Dept. of State, at https://www.state.gov/state-sponsors-of-terrorism/.

Appellants present a straightforward argument. When claims of decedents are administered through Florida's probate process, a personal representative is appointed to prosecute those claims. Those claims are subject only to whatever defenses might have been available against the decedents if they had brought the claims themselves. Here, it is undisputed that the decedents, Emma and Hilda, timely acquired their claims before the HBA's bar date (March 12, 1996). The Personal Representative was properly appointed to stand in Emma's and Hilda's shoes and bring their claims as part of the administration of their Estates. Because the HBA's bar date would not have applied to Emma and Hilda, it also did not, and does not, apply to the Personal Representative acting on behalf of their Estates.

One other point confirmed by Trafigura's brief is that this case turns on Florida state probate law. That law determines whether (i) the Personal Representative is authorized to prosecute Emma's and Hilda's timely-acquired claims as part of the administration of their Estates or, alternatively, whether (ii) ownership of those claims was acquired by their heir or by their Estates after the HBA's bar date. Because these are uniquely state-law issues that no Florida court has had an opportunity to address, Appellants are contemporaneously filing a motion to certify these questions to the Supreme Court of Florida.

This Court should either reverse the district court's erroneous dismissal order or ask the Supreme Court of Florida to consider the issues presented.

**Argument**

I. **Neither *Glen* Nor Any Other Court Of Appeals' Decision Addresses Whether A Personal Representative Of An Estate May Bring A Decedent's Claim Under The Helms-Burton Act**

Trafigura incorrectly argues that *Glen v. American Airlines* decides this case. Appellees' Br. at 16-17 (discussing *Glen v. Am. Airlines, Inc.*, 7 F.4th 331 (5th Cir. 2021)). But *Glen* does not involve a claim by a personal representative of an estate, and the word "estate" appears nowhere in the decision. *See Glen*, 7 F.4th at 331-37. Moreover, *Glen* adopted the same dictionary definition of the word "acquire" that the Personal Representative advocates here in support of her argument that the HBA's bar date should be applied based on the date when the claim holder obtains ownership of the claim *as her own*. Appellants' Br. at 21-22. *Glen* certainly does not stand for the proposition that, under Florida law, a personal representative of an estate acquires a decedent's claim *as her own* simply because she is authorized by law to prosecute the claim as part of administering the decedent's estate.

There is good reason not to extend *Glen* beyond its facts. In a subsequent HBA case involving an heir claim appealed to the Eleventh Circuit—*Garcia-Bengochea v. Carnival Corp.*—one member of the panel emphasized that barring heirs from bringing claims "undermines the express purposes of Title III of the Act and leaves many (and maybe most) U.S. nationals without a remedy for the trafficking of their confiscated properties." 57 F.4th 916, 932 (11th Cir. 2023)

(Jordan, J. concurring). This is contrary to the HBA's remedial purposes, which "call for a narrow interpretation of the word 'acquires'" that does not prevent the passing of claims through the probate process. *Id.* at 935; *see also id.* at 936 ("the legislative history indicates that Congress was worried not about the inheritance of interests in confiscated properties, but about the sale, trading, or bartering of such interests after the passage of the Helms-Burton Act"). Invoking the HBA's bar date to ban claims by heirs "goes against the express purposes of Title III," a problem exacerbated by the fact that the statutory language leading to the result in *Glen* and *Garcia-Bengochea* likely "was the result of sloppy drafting." *Id.* at 938, 939. Trafigura's attempt to expand the reach of *Glen* should be rejected.

Trafigura's argument also proceeds on a false premise that "someone or something else" must have acquired ownership of Emma's and Hilda's claims when they died. Appellees' Br. at 17. But this argument ignores the entire point of the probate process. Under Florida law, when Emma and Hilda died, the legal title (*i.e.* ownership) to their claims remained subject to the administration of their Estates in the probate court proceedings. Appellants' Br. at 17-18. And the Personal Representative is authorized to prosecute those claims. *Id.* *Glen* says nothing about whether the Personal Representative (or the Estates) "acquired" ownership of those claims as their own (they did not).

**II.    The District Court Erroneously Barred The Personal Representative From Litigating Emma's And Hilda's Claims Even Though She Was Authorized To Do So By The Florida Probate Court And Florida Probate Law**

Nor does Florida probate law support Trafigura's untimely acquisition argument. As Appellants explained previously, the Estates did not acquire ownership of the claims from Emma and Hilda. Appellants' Br. at 19-22. Instead, the Personal Representative stepped into Emma's and Hilda's shoes to bring the claims they owned at death. *Id.* at 22-25.

Trafigura's first attack is that Appellants have confused a claim with a cause of action. Appellees' Br. at 18-20. Not so. There is no dispute that Emma and Hilda timely acquired their claims. The Personal Representative is therefore permitted to step into their shoes and bring those claims in an action against Trafigura. *See* Fla. Stat. § 733.612(20) (authorizing a personal representative to "[p]rosecute or defend *claims* or proceedings in any jurisdiction for the protection of the estate …." (emphasis added)). Even Trafigura admits that Title III of the HBA creates a cause of action "if the U.S. national timely acquired the property claim." Appellees' Br. at 19. The real question that Trafigura inartfully articulates is whether the claims giving rise to the causes of action asserted in this litigation were timely or untimely acquired.

Trafigura's answer is no because, in its (incorrect) view, those claims vested in Emma's and Hilda's heir (Escalon) after the HBA's bar date. Appellees' Br. at

6

20-21. The problem for Trafigura is that this supposed vesting of ownership of the claims in Escalon did not occur.

It is undisputed that a Florida probate court[2] authorized the Personal Representative to prosecute Emma's and Hilda's claims, which could not have been done if ownership of those claims had vested in their heir. Appellants' Br. at 16-18. Trafigura has no answer to this conclusion—only a series of obfuscations. First, Trafigura cites Emma's and Hilda's wills, but the fact that Escalon may have had an equitable interest in the claims as an heir does not mean she acquired legal title to those claims. *See* Appellants' Br. at 18. For legal title to pass, the wills needed to be probated, and even Trafigura admits that never happened. *See* Appellees' Br. at 7 (stating that "Emma's and Hilda's wills were not previously admitted to probate"); *see also id.* at 22 (admitting that "[p]robate thus validates a will and distributes assets"). Trafigura misconstrues *Rice v. Green* as creating some sort of exception to this rule, but that court was clear that the decedent's heir (his wife) "lacked marketable title to the property" because his will was never offered for probate. 941 So.2d 1230, 1231 (Fla. Dist. Ct. App. 2006). Whatever equitable considerations impacted that court's ultimate disposition of the property at issue there do not change

---

[2] Trafigura oddly accuses the Personal Representative of "neglecting the probate case" based on two months of inactivity. *See* Appellees' Br. at 10 n.2. This is incorrect and, regardless, has no impact on the merits of this appeal (nor does Trafigura suggest otherwise).

7

the fact that legal title did not pass to the heir because the will was not probated. So too here.

Likewise, Trafigura's few references to the Florida probate code do not support its argument. Even if the testator's death "is the event that vests the right to devises" (Fla. Stat. § 732.514), Trafigura cites no authority (nor is there any) for equating the right to a devise of a claim with actual ownership of a claim. Section 733.103 speaks to proof of ownership of devised property; it says nothing about when an heir is deemed to have acquired ownership.

The critical question is whether ownership of Emma's and Hilda's claims vested in Escalon as their heir when they died. The answer is no. The Florida probate court authorized the Personal Representative to administer the Estates, the only assets of which are the claims at issue, and the Florida probate code (and the Florida probate court) explicitly authorizes the Personal Representative to pursue those claims on behalf of the Estates. *See* Fla. Stat. § 733.612(20). Trafigura repeatedly argues that Escalon's rights as an heir "vested" when Emma and Hilda died (*e.g.*, Appellees' Br. at 23), but nowhere does Trafigura cite any authority holding that legal ownership of a decedent's claim can be acquired by an heir unless and until the decedent's will has been administered through the probate process. This is not surprising. After all, Florida has an entire section of probate code dedicated to the administration of estates. *See* Fla. Stat. §§ 733.01-733.903.

8

Trafigura's argument skips over that entire process by contending that Emma's and Hilda's claims transferred to their heir as soon as they died, leaving no property in the Estates for administration. Trafigura is wrong on that point, and so was the district court.

### III. The District Court Also Erred By Disregarding The Fact That The Decedents Timely Acquired Their Claims And Holding Instead That Their Estates Had A Different And Untimely Acquisition Date

Trafigura devotes the remaining nine pages of their brief to defending the district court's one-paragraph analysis of the estate-related issues. The district court's cursory approach lacks support in Florida law, and Trafigura offers no persuasive reason to affirm it.

#### A. Under Florida probate law, estates cannot acquire property as their own

Appellants previously explained in detail that Florida law defines an "estate" as "the property of a decedent that is the subject of administration." Fla. Stat. § 731.201(14); *see also Wilkes v. United States*, No. 3:97-CV-1317-J-21A, 2000 WL 1367885, at *7 (M.D. Fla. Oct. 18, 2000) (describing estates as "merely the sum total of a deceased person's property" (quotation omitted)); Appellants' Br. at 20-22. Because the estate *is* the property of the decedent, it cannot *acquire* that property. Property cannot acquire itself.

In response to the multiple authorities in Florida and other states standing for this common-sense proposition, Trafigura cites to a treatise and Section 733.612(5)

9

of the Florida probate code. Appellees' Br. at 26. The former is a curious choice, since Trafigura cites no Florida court that has adopted the treatise. The latter actually proves Appellants' point. Section 733.612(5) makes clear that "***a personal representative*** … may properly … [a]cquire or dispose of an asset …." Fla. Stat. § 733.612(5) (emphasis added). It does not say that an estate may properly acquire ownership of, or dispose of, an asset.[3]

Unable to sustain a counterargument, Trafigura simply punts to the out-of-circuit decision rendered by another federal district court in the *Seaboard Marine* case. That case was wrongly decided for a number of reasons already explained. Appellants' Br. at 25-26.

Trafigura's brief highlights two additional points: first, that the available Florida precedent is scant—two intermediate appellate court decisions from 1968 (*Sharps*) and 2017 (*Depriest*), and no state supreme court decision on point. Second, that no Florida court has held that an estate actually can acquire ownership of a decedent's claim. *Sharp's* reference to a check being an asset of the estate (Appellees' Br. at 27) is equally consistent with the view that the check was one of the decedent's assets comprising a part of the estate (not an asset owned by the estate). Similarly, *Depriest's* use of the word "belonging" is taken out of context.

---

[3] In footnote 4, Trafigura cites a general definitions provision of the Florida probate code that refers to "causes of action of the estate." Appellees' Br. at 26 n.4 (citing Fla. Stat. § 731.201(32)). Again, nothing in this provision says that an estate can acquire ownership of a decedent's claim.

10

The full sentence cited by Trafigura states: "[The car] might have ended up being sold to pay the estate's obligations, no longer belonging to the estate or any beneficiary." *Depriest v. Greeson*, 213 So. 3d 1022, 1026 (Fla. Dist. Ct. App. 2017). This is a hypothetical statement by the court, not a description of what actually happened in the case, much less authority for the proposition that an estate can acquire ownership of a decedent's claim.

### B. Title III's purpose is to provide remedies to the Cuban Government's victims, not to protect its business partners

Trafigura does not dispute that Emma and Hilda could have brought their claims back in 1996, if Title III had not been suspended, or in May 2019, if they had lived to see the day when the suspension was lifted. It is thus Trafigura that seeks to undermine Title III's operation by penalizing claim holders simply because they died at the wrong time. Nowhere in the text or history of the HBA is there a shred of support for this unfair outcome.

The true history and remedial purpose of Title III is explained in detail by Judge Jordan in his concurring opinion in *Garcia Bengochea*. 57 F.4th at 931. As Judge Jordan observed, construing the HBA's bar date to dismiss claims by heirs "undermines the express purposes of Title III …." *Id.* at 932.[4] Even more so if that

---

[4] *Garcia Bengochea* only dealt with an heir and did not in in any way address estates because the question was not raised there.

construction is expanded to dismiss claims brought by personal representatives of estates.

Trafigura feigns concern for the probate process and warns of purportedly "incongruous results" in a "two-tiered system" if courts entertain claims brought by personal representatives. Appellees' Br. at 3, 30-31. But this is all self-serving bluster. Trafigura presents no evidence that any Title III claim holder has tried to abuse the probate process or has obtained an arbitrary or unfair outcome (because there is none).

### C. Congress intended to compensate Castro's victims

In a final misguided argument, Trafigura contends that the HBA's "private right of action therefore focuses not on compensating victims of the Castro regime but on using the threat and potential economic impact of lawsuits to drive political change." Appellees' Br. at 32. Perhaps Trafigura skipped over the congressional findings in Title III, which are replete with references to the rights of victims to receive compensation. *See* 22 U.S.C. § 6081. The final finding could not be more clear:

> To deter trafficking in wrongfully confiscated property, United States nationals who were ***the victims of these confiscations should be endowed with a judicial remedy*** in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures.

*Id.* § 6081(11) (emphasis added). The notion that Title III is just a political tool and is not focused on providing a real remedy to victims is belied not only by what Congress found, but also by what it did when it enacted a private right of action that explicitly provides victims with an opportunity to obtain compensation from those who, like Trafigura, profit from confiscated property at the expense of those victims. *See* 22 U.S.C. § 6082. Congress did not intend for the HBA's bar date to deprive victims and their families of the compensation rightfully due to them. Accordingly, the HBA's bar date should be construed in the way that best serves Congress' remedial purpose, not Trafigura's self-serving purpose. *See Tcherepnin v. Knight,* 389 U.S. 332, 336 (1967) ("In addition, we are guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes.").

## Conclusion

Appellants ask the Court to reverse the district court's final judgment of dismissal and to remand this case for further proceedings.

Date: September 14, 2023

Respectfully submitted,

BERLINER CORCORAN & ROWE LLP
/s/ Jared R. Butcher
Jared R. Butcher
jbutcher@bcrlaw.com
David A. Baron
dbaron@bcrlaw.com
Melvin White

13

mwhite@bcrlaw.com  
1101 17th Street, N.W., Suite 1100  
Washington, D.C. 20036-4798  
Tel: (202) 293-5555  
Facsimile: (202) 293-9035  
Counsel for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, a true and correct copy of the foregoing Brief for Plaintiffs-Appellants was served via electronic filing with the Clerk of Court and all registered ECF users. Upon acceptance by the Court of the e-filed document, 7 paper copies will be filed with the Court within the time provided in the Court's rules via Federal Express.

Date: September 14, 2023            Respectfully submitted,

BERLINER CORCORAN & ROWE LLP

/s/  Jared R. Butcher  
Jared R. Butcher  
jbutcher@bcrlaw.com  
David A. Baron  
dbaron@bcrlaw.com  
Melvin White  
mwhite@bcrlaw.com  
1101 17th Street, N.W., Suite 1100  
Washington, D.C. 20036-4798  
Tel: (202) 293-5555  
Facsimile: (202) 293-9035  
Counsel for Plaintiffs-Appellants

# CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word. Excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), this brief contains 3085 words.

| | |
|---|---|
| Date: September 14, 2023 | Respectfully submitted,<br><br>BERLINER CORCORAN & ROWE LLP<br><br><u>/s/  Jared R. Butcher</u><br>Jared R. Butcher<br>jbutcher@bcrlaw.com<br>David A. Baron<br>dbaron@bcrlaw.com<br>Melvin White<br>mwhite@bcrlaw.com<br>1101 17th Street, N.W., Suite 1100<br>Washington, D.C. 20036-4798<br>Tel: (202) 293-5555<br>Facsimile: (202) 293-9035<br>Counsel for Plaintiffs-Appellants |