# United States Court of Appeals
*for the*
# Fifth Circuit

Case No. 23-20191

HILDA M. CASTANEDO ESCALON; ESTATE OF HILDA CASTANEDO; ESTATE OF EMMA DIAZ,

*Plaintiffs-Appellants,*

– v. –

TRAFIGURA TRADING L.L.C.; TRAFIGURA GROUP PTE LIMITED; TRAFIGURA PTE LIMITED,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS (HOUSTON), CASE NO. 4:21-CV-659 HONORABLE ALFRED H. BENNETT, U.S. DISTRICT JUDGE

## MOTION TO CERTIFY QUESTIONS TO SUPREME COURT OF FLORIDA

JARED R. BUTCHER
DAVID A. BARON
MELVIN WHITE
BERLINER CORCORAN & ROWE LLP
*Attorneys for Plaintiffs-Appellants*
1101 17th Street, NW, Suite 1100
Washington, DC 20036
(202) 293-5555
jbutcher@bcrlaw.com
dbaron@bcrlaw.com
mwhite@bcrlaw.com

# Certificate of Interested Persons

Appellants Hilda M. Castanedo Escalon, *et al.*, by their undersigned counsel and under Fed. R. App. P. 26.1 and 5th Cir. R. 26.1-1 and 27.4, certify that this Certificate of Interested Persons constitutes a complete list of the persons, firms, partnerships, corporations, and entities who have interest in the outcome of this appeal. Identifiable interested parties to the action are:

- Plaintiff Hilda M. Castanedo Escalon
- Plaintiff Estate of Hilda Castanedo
- Plaintiff Estate of Emma Diaz
- Defendant Trafigura Trading, LLC
- Defendant Trafigura Pte Ltd.
- Defendant Trafigura Group Pte Ltd.
- Other members of the Trafigura Group may have a financial interest in the outcome of this litigation.
- Baron, David A., Attorney for Appellants
- Barber, Kathryn M., Attorney for Appellees
- Berliner Corcoran & Rowe, LLP Attorneys for Appellants
- Bennett, Alfred H, U.S. District Court Judge, Southern District of Texas
- Brackett, Alex J., Attorney for Appellees
- Butcher, Jared, R., Attorney for Appellants
- Cunniff, Martin, Attorney for Appellants
- Eppler, Dale, Attorney for Appellants

- Fields PLLC, Attorneys for Appellants

- Fields, Richard W., Attorney for Appellants

- Lopez, Laina C., Attorney for Appellants

- Madriz, Yasser A., Attorney for Appellees

- MCGUIREWOODS LLP, Attorneys for Appellees

- White, Melvin, Attorney for Appellants

Appellants are not corporations, and thus, they have no parent corporations, nor does any publicly traded corporation own 10% or more of their stock.

BERLINER CORCORAN & ROWE LLP

/s/  Jared R. Butcher
Jared R. Butcher
jbutcher@bcrlaw.com
David A. Baron
dbaron@bcrlaw.com
Melvin White
mwhite@bcrlaw.com
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel: (202) 293-5555
Facsimile: (202) 293-9035

*Counsel for Plaintiffs-Appellants*

ii

# Table of Contents

Certificate of Interested Persons ................................................................................ i
Table of Contents .................................................................................................... iii
Table of Authorities ................................................................................................ iv
Introduction ...............................................................................................................1
Background ...............................................................................................................2
Argument ...................................................................................................................4
I.   Whether An Heir Acquires Ownership of A Decedent's Claim At The Date Of Death Is A Determinative And Unsettled Question Of Florida Probate Law .....5
II.  Whether An Estate Is Capable Of Acquiring Ownership Of A Decedent's Claim Is A Determinative And Unsettled Question Of Florida Probate Law .....7
III. Other Factors Favor Certification ...................................................................9
Conclusion ...............................................................................................................10
Certificate of Service ..............................................................................................11
Certificate of Compliance .......................................................................................12
Certificate of Conference ........................................................................................13

# Table of Authorities

**CASES**

*Depriest v. Greeson,*
   213 So. 3d 1022 (Fla. Dist. Ct. App. 2017)..........................................................8
*Fernandez v. Seaboard Marine Ltd.*,
   No. 20-CV-25176, 2021 WL 4902506 (S.D. Fla. Oct. 21, 2021).........................8
*Markham v. Allen*,
   326 U.S. 490 (1946) ............................................................................................6
*Rice v. Green*,
   941 So. 2d 1230, 1231 (Fla. Dist. Ct. App. 2006)................................................5
*Sharps v. Sharps,*
   214 So. 2d 492 (Fla. Dist. Ct. App. 1968)............................................................8
*Swindol v. Aurora Flight Scis. Corp.*,
   805 F.3d 516 (5th Cir. 2015) ....................................................................... 4, 5, 9
*Trent v. Nat'l City Bank of Indiana*,
   145 F. App'x 896 (5th Cir. 2005).........................................................................6

**STATUTES**

22 U.S.C. § 6082..........................................................................................................2
22 U.S.C. § 6082(a) .....................................................................................................3
22 U.S.C. § 6082(a)(4).................................................................................................3
22 U.S.C. § 6082(a)(4)(B) ...........................................................................................7
22 U.S.C. §§ 6021-6085 ..............................................................................................1
Fla. Stat. § 732.514 ......................................................................................................7
Fla. Stat. § 733.612(20)...........................................................................................2, 6
Fla. Stat. § 733.612(5)..................................................................................................8
Fla. Stat. §§ 733.01-733.903 .......................................................................................7

**RULES**

Fla. R. App. P. 9.150....................................................................................................2
Fla. R. App. P. 9.150(a) ........................................................................................4, 10

## Introduction

The claims alleged by Plaintiffs-Appellants in this case arise from federal law—Title III of the Helms-Burton Act ("HBA"), 22 U.S.C. §§ 6021-6085—but the district court dismissed those claims on the basis of its erroneous interpretation of Florida state probate law. The briefs filed by both sides confirm that this case turns on the proper interpretation of Florida state law regarding the relationship between a decedent, her estate, and her heir. Indeed, the brief of Defendants-Appellees refers to Florida law or Florida probate law approximately twenty-three times in seeking to defend the district court's decision.

The factual predicate for the district court's decision is straightforward. Appellant Hilda Castanedo Escalon ("Escalon") commenced this case in her capacity as the Personal Representative of the estates of her aunt, Emma Diaz ("Emma"), and her mother, Hilda Castanedo ("Hilda"). ROA.8-30. Emma and Hilda acquired ownership of their claims before the HBA was enacted, but both passed away before claims under the Act became actionable. The district court found this to be fatal to their claims because of the HBA's provision barring claimants from untimely acquiring ownership of claims. The court held, as a matter of Florida state law, that ownership of Emma's and Hilda's claims had been untimely acquired by their heir or, alternatively, by their Estates. Thus, the court concluded that the Personal Representative could not prosecute those claims here,

notwithstanding the fact that she was explicitly authorized to do so by a Florida state probate court and the Florida probate code. *See* ROA.42-43, 55-56; Fla. Stat. § 733.612(20).

Appellants respectfully contend that the district court's interpretation of Florida state law was error. But to the extent there is uncertainty about the state-law issues, it should be resolved by the Supreme Court of Florida, which is the proper court to determine state-law issues such as (i) whether ownership of Emma's and Hilda's claims was acquired by their heir or their Estates and (ii) whether the Personal Representative is authorized to prosecute their claims. These are plainly matters of probate law well within the purview of state courts.

These issues also appear to be unresolved by any controlling precedent from the Florida state courts. Accordingly, this Court should certify these issues to the Supreme Court of Florida. *See* Fla. R. App. P. 9.150.

**Background**

The background of this case is described in Appellants' brief (at 6-12). In sum, this case was commenced on March 1, 2021 by the Personal Representative of the Estates. ROA.8-30. The Personal Representative alleged claims against Defendants-Appellees ("Trafigura") under Title III of the HBA, which creates a private civil remedy against those who traffic in property confiscated by the Castro regime. *See* 22 U.S.C. § 6082.

When the HBA was enacted in 1996, the decedents Emma and Hilda were U.S. nationals who owned claims to a mining company and related assets in Cuba (the "Confiscated Property"), all of which had been confiscated by the Castro regime without any compensation to them or their family. ROA.9 ¶2, ROA.14-15 ¶24. They acquired ownership of their claims to the Confiscated Property when their father Waldo died, well before 1996. ROA.25-26 ¶60, *see also* ROA.67-69 (Escalon affidavit describing family history). Although they were eligible to bring claims (22 U.S.C. § 6082(a)), the private right of action under Title III was suspended until May 2019, and they both passed away before the suspension was lifted. *See* ROA.31-43, ROA.44-56 (probate court filings).

The HBA has a bar date for certain Title III claims, which is March 12, 1996. *See* 22 U.S.C. § 6082(a)(4). Trafigura invoked the bar date in moving to dismiss this case, arguing that either Emma's and Hilda's heir or their Estates had untimely acquired the claims when they each passed away after that date.

The district court agreed and dismissed the claims based on its interpretation of Florida state probate law and the relationship between decedents, estates, and heirs under that law. The district court began by noting that Escalon was the heir of Emma and Hilda under their wills. The court reasoned that "any rights Decedents [Emma and Hilda] had to the Confiscated Property vested in Escalon on the dates of their deaths: July 27, 1996 and June 6, 2000, respectively." ROA.2857. The parties

dispute the merits of this issue, but both sides agree it is an issue that turns on Florida state probate law. *See* Appellants' Br. at 16-18 (analyzing Florida probate court orders and Florida probate code provisions); Appellees' Br. at 18-23 (same).

The district court articulated an alternative rationale for dismissal that is similarly based on Florida probate law. The court found that even if the claims did not transfer to Escalon as the heir, they were still barred because they "were not part of [Emma's and Hilda's] respective Estates before the statutory cutoff." ROA.2857-58. Again, the parties take opposite positions on the merits, but agree it turns on Florida state probate law. *See* Appellants' Br. at 19-26 (analyzing Florida probate code provisions and caselaw); Appellees' Br. at 24-28 (same).

**Argument**

This Court has discretion to certify questions to a state supreme court when permitted by state law. *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015). The Supreme Court of Florida may answer questions of law certified to it by "a United States court of appeals … if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida." Fla. R. App. P. 9.150(a). The decision to certify is further guided by the following additional factors "(1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the

certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court." *Swindol*, 805 F.3d at 522.

I. **Whether An Heir Acquires Ownership of A Decedent's Claim At The Date Of Death Is A Determinative And Unsettled Question Of Florida Probate Law**

The district court's primary rationale was that Emma's and Hilda's claims vested in their heir when they died—Emma in July 1996 and Hilda in June 2000. ROA.2857. The problem with the district court's rationale is that it conflates the right to a devise with the transfer of legal title necessary to convey ownership of the claim. The lone case cited by the district court—*Rice v. Green*—merely holds that an heir's right to a devise vests at the time of a decedent's death. 941 So. 2d 1230, 1231 (Fla. Dist. Ct. App. 2006). It does not say that an heir acquires ownership of a decedent's property at the time of death.

The Florida state probate court's orders admitting Emma's and Hilda's wills to probate provide a good indication that the district court was wrong. When that court appointed the Personal Representative, the only asset listed for each Estate was:

> Right to pursue a cause of action pursuant to the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act, 22 U.S.C. Section 6021, et seq. (the "Act") on property and rights confiscated (the "Confiscated Property") to decedent … and to her father Waldo Pascual Diaz y Martinez by the Cuban Government without authorization by or compensation paid to their rightful owners ….

5

ROA.34-35 (Emma), ROA.47-48 (Hilda). The Florida probate court entered orders admitting both wills to probate and appointing Escalon as the Personal Representative for both Estates. ROA.42-43, 55-56. This means that the Personal Representative was, and is, authorized to pursue those claims on behalf of the Estates. *See* Fla. Stat. § 733.612(20) (personal representative may "[p]rosecute or defend claims or proceedings in any jurisdiction for the protection of the estate, of the decedent's property …."). This would make no sense if, as the district court found, those claims had already been transferred to the heir and were not part of the Estates.

In this Circuit, a ruling by a state probate court on an issue of state probate law should be entitled to deference. *See Trent v. Nat'l City Bank of Indiana*, 145 F. App'x 896, 898 (5th Cir. 2005) (stating that "the federal court 'has no jurisdiction to probate a will or administer an estate.'" (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946))). Instead, the district court overrode the Florida probate court's authorization of the Personal Representative and found that the Personal Representative could not pursue Emma's and Hilda's claims. The district court's analysis turned on its (mis)interpretation of Florida state probate law and the question of when legal title of a decedent's property passes to an heir.

That question makes all the difference to the application of the HBA's bar date in this case. The bar date only applies to a claim if the claimant "acquires

6

ownership of the claim" after March 12, 1996. 22 U.S.C. § 6082(a)(4)(B). The district court found this was so because Emma's and Hilda's heir purportedly acquired ownership of their claims when they died after March 12, 1996, but this finding equates vesting of a right to a devise of a claim with acquisition of ownership of the claim. There is good reason to believe that, as a matter of Florida law, ownership of the claims remained subject to the probate process authorized by the state probate court. *See* Appellants' Br. at 22-25. After all, Florida has an entire section of probate code dedicated to the administration of estates. *See* Fla. Stat. §§ 733.01-733.903. The district court's holding skips over that entire process by finding that Emma's and Hilda's claims transferred to their heir as soon as they died, leaving no property in the Estates for administration.

The district court quoted Section 732.514 about death being "the event that vests the right to devises." ROA.2856. But it did not explain how the vesting of a devise of a claim equates to acquisition of ownership of the claim. Appellants believe that the Florida Supreme Court is better positioned to resolve this question than a federal court sitting in Texas.

## II. Whether An Estate Is Capable Of Acquiring Ownership Of A Decedent's Claim Is A Determinative And Unsettled Question Of Florida Probate Law

The district court's alternative rationale is that the HBA bar date applies even if the heir did not acquire ownership of the claims, because this must mean that the

7

Estates acquired ownership after the bar date. ROA.2857-58. The court's one-paragraph ruling on this point contains no independent analysis and, instead, relies on another federal district court decision in *Fernandez v. Seaboard Marine Ltd.*, No. 20-CV-25176, 2021 WL 4902506 (S.D. Fla. Oct. 21, 2021). *Fernandez*, in turn, assumes that an estate is capable of acquiring ownership of a decedent's property, but this is a problematic view of the Florida probate code, which provides that an estate is not an entity capable of acquiring ownership of a decedent's property. Appellants' Br. at 19-22.

Appellants and Appellees unsurprisingly offer competing views of the capabilities of an estate under Florida law. Appellants contend they have the better argument based on the Florida probate code's definition of an estate and caselaw in Florida and elsewhere making clear that an estate is merely the decedent's property, not the owner of that property. Appellants' Br. at 20-22. In response, Appellees cite to a treatise and Section 733.612(5) of the Florida probate code. Appellees' Br. at 26. The one thing that emerges from these arguments is the unsettled nature of this question. The Florida state precedent is scant—two intermediate appellate court decisions from 1968 (*Sharps*) and 2017 (*Depriest*), and no state supreme court decision on point.

This question regarding the relationship between an estate and the decedent's property also determines the application of the HBA's bar date. If Emma's and

8

Hilda's Estates were not capable of acquiring ownership of their claims under Florida law, then the district court's alternative rationale was also wrong, and the court should have held that the Personal Representative stepped into Emma's and Hilda's shoes in order to bring their claims here. Appellants' Br. at 22-25. Appellants respectfully suggest that this Court would benefit from a more thorough explanation of the relationship between an estate and a decedent's property from the Supreme Court of Florida.

### III. Other Factors Favor Certification

The other factors governing certification in this Circuit are in accord. The state-law questions discussed above have not been explored in detail by the Florida state courts. *Swindol*, 805 F.3d at 522 (citing "the closeness of the question and the existence of sufficient sources of state law"). This makes sense considering that these questions have arisen in the context of claims under a federal statute (the HBA) that has only been litigated since 2019. Appellants have found no Florida state case addressing the interplay between the probate process and ownership of a decedent's claim arising under federal law.

Comity also favors allowing the Supreme Court of Florida the opportunity to consider the Florida probate law questions at issue in this case. *Swindol*, 805 F.3d at 522 (citing "the degree to which considerations of comity are relevant in light of the particular issue and case to be decided"). Obviously, Florida has a strong interest

9

in ensuring that its probate code is properly interpreted and applied to the property rights of its citizens.

Finally, Appellants do not foresee any practical limitations that would disfavor the certification process. *Swindol*, 805 F.3d at 522 (citing "practical limitations of the certification process"). Florida's appellate rules provide a process for considering a request from this Court. Fla. R. App. P. 9.150(a). The additional time required for this process to unfold is warranted by the need for guidance on controlling issues of state law.

## Conclusion

The Court should certify the controlling questions of Florida law addressed above to the Supreme Court of Florida.

Date: September 14, 2023　　　　　　　Respectfully submitted,

BERLINER CORCORAN & ROWE LLP
/s/ Jared R. Butcher
Jared R. Butcher
jbutcher@bcrlaw.com
David A. Baron
dbaron@bcrlaw.com
Melvin White
mwhite@bcrlaw.com
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel: (202) 293-5555
Facsimile: (202) 293-9035
Counsel for Plaintiffs-Appellants

## Certificate of Service

I hereby certify that on September 14, 2023, a true and correct copy of the foregoing Motion to Certify was served via electronic filing with the Clerk of Court and all registered ECF users. Upon acceptance by the Court of the e-filed document, three paper copies will be filed with the Court within the time provided in the Court's rules via Federal Express.

Date: September 14, 2023

Respectfully submitted,

BERLINER CORCORAN & ROWE LLP

/s/ Jared R. Butcher
Jared R. Butcher
jbutcher@bcrlaw.com
David A. Baron
dbaron@bcrlaw.com
Melvin White
mwhite@bcrlaw.com
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel: (202) 293-5555
Facsimile: (202) 293-9035
Counsel for Plaintiffs-Appellants

**Certificate of Compliance**

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word. Excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), this brief contains 2,311 words.

Date: September 14, 2023

Respectfully submitted,

BERLINER CORCORAN & ROWE LLP

/s/  Jared R. Butcher
Jared R. Butcher
jbutcher@bcrlaw.com
David A. Baron
dbaron@bcrlaw.com
Melvin White
mwhite@bcrlaw.com
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel: (202) 293-5555
Facsimile: (202) 293-9035
Counsel for Plaintiffs-Appellants

## Certificate of Conference

On September 7 and 13, 2023, Jared Butcher, counsel for Appellants, conferred with Alex Brackett, counsel for Appellees, who indicated that Appellees oppose this motion and will file a response.

Date: September 14, 2023

Respectfully submitted,

BERLINER CORCORAN & ROWE LLP

/s/ Jared R. Butcher
Jared R. Butcher
jbutcher@bcrlaw.com
David A. Baron
dbaron@bcrlaw.com
Melvin White
mwhite@bcrlaw.com
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel: (202) 293-5555
Facsimile: (202) 293-9035
Counsel for Plaintiffs-Appellants