**No. 23-20191**

In the

# United States Court of Appeals
## For the Fifth Circuit

---

HILDA M. CASTANEDO ESCALON; ESTATE OF HILDA CASTANEDO;
ESTATE OF EMMA DIAZ,

*Plaintiffs-Appellants,*

*v.*

TRAFIGURA TRADING LLC; TRAFIGURA GROUP PTE LIMITED;
TRAFIGURA PTE LIMITED,

*Defendants-Appellees.*

---

From the United States District Court
for the Southern District of Texas, Houston
Honorable Alfred H. Bennett, District Judge
Case No. 4:21-cv-659

---

**DEFENDANTS-APPELLEES' RESPONSE IN OPPOSITION TO
PLAINTIFFS-APPELLANTS' MOTION TO CERTIFY A
QUESTION OF STATE LAW TO THE FLORIDA SUPREME
COURT**

---

Kathryn M. Barber
Alex J. Brackett
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1227
F: (804) 698-2227

*Counsel for Appellees*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-20191
*Castanedo Escalon, et al. v. Trafigura Trading LLC, et al.*

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- Bennett, Alfred H., U.S. District Court Judge, Southern District of Texas

### Defendants-Appellees

- Trafigura Trading LLC ("TTL")

  o TTL is a Delaware limited liability company, which is directly owned by Trafigura U.S., Inc. ("TUSI")[1], and is ultimately owned indirectly by Trafigura Group PTE Ltd. ("TGPL"), a Singapore company.  TTL is not publicly traded.

- Trafigura PTE Ltd. ("TPTE")

  o TPTE is a Singapore company, which is ultimately owned indirectly by TGPL.  TPTE is not publicly traded.

- Trafigura Group PTE Ltd. ("TGPL")

---

[1] TUSI is the highest level Trafigura entity in the United States.

i

- o TGPL is a Singapore company, which is the reference parent company and consolidating entity for the Trafigura "Group" of companies, of which TTL and TPTE are each a part. TGPL is not publicly traded.

- The Trafigura Group of companies operates within a private company structure and as an employee-owned company. The Trafigura Group of companies is exclusively owned by its management and key senior employees.

## Counsel for Defendants-Appellees

- Barber, Kathryn M.

- Brackett, Alex J.

- Madriz, Yasser A.

- McGuireWoods LLP

## Plaintiffs-Appellants

- Hilda M. Castanedo Escalon

- Estate of Hilda Castanedo

- Estate of Emma Diaz

## Counsel for Plaintiffs-Appellants

- Baron, David A.

- Berliner Corcoran & Rowe, LLP

- Butcher, Jared, R.

- Cunniff, Martin

- Eppler, Dale

- Fields PLLC

- Fields, Richard W.

- Lopez, Laina C.

- White, Melvin

*/s/ Kathryn M. Barber*
Kathryn M. Barber

*Attorney of Record for Appellees Trafigura Trading LLC, Trafigura Group Pte Limited, and Trafigura Pte Limited*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................3

I.  Neither question is determinative of the cause. ..............................3

II.  Federal and state law clearly answer the proposed questions. .......7

    A.  Florida law is clear that any purported claims to property vested in Escalon, as sole heir, when the testators died. ......................................7

    B.  Florida law is clear that the Estates acquired the property claims as of the time of the testators' deaths if Escalon did not. ........................10

III.  Certification is not warranted under this Court's *Shevin* factors. ................11

    A.  The questions are not close and ample law exists.............................12

    B.  Comity is not relevant in this federal question case..........................12

    C.  Certification will cause unwarranted delay.......................................13

CONCLUSION .........................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Estate of Bagley v. United States*,
  443 F.2d 1266 (5th Cir. 1971) ............................................................10

*Bloom v. Aftermath Pub. Adjusters, Inc.*,
  902 F.3d 516 (5th Cir. 2018) ..............................................................12

*Depriest v. Greeson*,
  213 So.3d 1022 (Fla. Dist. Ct. App. 2017) .........................................11

*Garcia-Bengochea v. Carnival Corp.*,
  57 F.4th 916 (11th Cir. 2023) ...............................................................5

*Glen v. American Airlines, Inc.*,
  7 F.4th 331 (5th Cir. 2021) ......................................................1, 4, 5, 11

*Glen v. Trip Advisor LLC*,
  529 F. Supp. 3d 316 (D. Del. 2021)......................................................4

*Lumbert v. Estate of Carter*,
  867 So.2d 1175 (Fla. Dist. Ct. App. 2004) ...........................................6

*Pournelle v. Baxter*,
  151 Fla. 32 (1942)...............................................................................10

*Rice v. Greene*,
  941 So.2d 1230 (Fla. Dist. Ct. App. 2006) ...........................................9

*Estate of Richard v. Comm'r*,
  2012 Tax Ct. Memo LEXIS 174, (U.S.T.C. 2012)................................9

*Sharps v. Sharps*,
  214 So.2d 492 (Fla. Dist. Ct. App. 1968) ...........................................11

*Fla. ex rel. Shevin v. Exxon Corp.*,
  526 F.2d 266 (5th Cir. 1976) ...............................................................2

*Sorrells v. McNally*,
  89 Fla. 457 (1925)..........................................................................4, 6, 9

*Swindol v. Aurora Flight Scis. Corp.*,
    805 F.3d 516 (5th Cir. 2015) ....................................................................2, 12, 13

**Statutes**

Fla. Stat. § 732.514 ............................................................................................7, 9

Fla. Stat. § 733.612 ..........................................................................................8, 11

**Other Authorities**

Fla. R. App. P. 9.150(a) ..........................................................................................1

Vest, Black's Law Dictionary (11th ed. 2019) ........................................................7

# **INTRODUCTION**

Plaintiffs-Appellants' motion to certify is a meritless effort to delay the inevitable and correct result in this case: affirmance of the District Court's decision that their claims to property were not timely acquired under Title III of the Helms-Burton Act. Florida law permits certification of a state law question only if it will be "determinative of the cause" and there is no controlling precedent from the Florida Supreme Court. Fla. R. App. P. 9.150(a). But as Defendants-Appellees' merits brief already makes clear, this Court does not need to map the precise contours of Florida law to reach the correct result here. Whichever person or entity currently possesses or controls the purported property claims necessary to support this Title III action would necessarily have "acquired" them, within Title III's broad use of that term, after Title III's statutory cut-off date. This Court's decision in *Glen v. American Airlines, Inc.*, 7 F.4th 331 (5th Cir. 2021), thus controls and defeats Plaintiffs' asserted Title III action.

There is also no ambiguity in Florida law that warrants certification—especially because the questions here are intertwined with and decided by this Court's broad reading of Title III's term "acquire." Plaintiffs continually conflate a Title III cause of action with an underlying claim to property, but only the latter is relevant here. The Estates' lack of a timely-acquired property claim defeats any Title III cause of action their personal representative now seeks to pursue. Florida

law establishes that any claims to property that might exist vested in Hilda Escalon upon the testators' deaths (and as of the date of their deaths) as the only devisee of the testators' respective wills, neither of which includes any condition that had to be satisfied before those claims to property vested in Escalon. Florida law—along with Title III's statutory language, as interpreted by this Court in *Glen*—also makes clear that estates can "acquire" property interests for purposes of Title III's timely acquisition requirement, meaning the Estates here must hold those interests to the extent Escalon does not, and would have acquired them upon the testators' deaths. Accordingly, certification is not justified under Florida law.

Even if certification was warranted under Florida's appellate rules—and it is not—this Court's *Shevin* factors (closeness of the question and existence of sufficient sources of state law, comity, and practical limitations) do not support that course. *See Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015) (describing factors derived from *Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274-75 (5th Cir. 1976)).

The first and most important *Shevin* factor—the closeness of the question and sufficiency of state law—strongly weighs against certification because ample state law exists on both questions and neither question is close.

The second *Shevin* factor—comity—also does not support certification. The questions posed here are not pure ones of state law; rather, they are inextricably

intertwined with the interpretation of a federal statute. And their correct resolution by this Court will have no impact on Florida probate proceedings. Indeed, Florida's only interest in this matter is to have it quickly and correctly resolved by this Court.

Finally, the third *Shevin* factor—the practical limitations of the certification process—confirms that certification is not justified. Certification will significantly delay this long-pending case, and there may be no way for the Court to cleanly frame the certified questions without impacting federal issues this Court has already resolved, and of which this Court should be the sole and final arbiter.

There is no justification for delaying this appeal's resolution to pose already clear and non-determinative questions to the Florida Supreme Court. This Court should deny Plaintiffs' motion and proceed to decide the merits.

## ARGUMENT

This Court should decline Plaintiffs' invitation to ignore both the dispositive issues in this appeal and the well-settled nature of relevant Florida law.

### I.    Neither question is determinative of the cause.

Plaintiffs posit that "whether an heir acquires ownership of a decedent's claim at the date of death" and "whether an estate is capable of acquiring ownership of a decedent's claim" are determinative questions in this Title III action for which guidance is required from the Florida Supreme Court. They are not.

"If the property giving rise to [a Title III] suit was confiscated before March 12, 1996, a United States national may not bring an action under the Act unless he acquired ownership of the claim before March 12, 1996." *Glen*, 7 F.4th at 333. As this Court held in *Glen*, "acquires" broadly means "to gain possession or control of; to get or obtain." *Id.*; *see also Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 328 (D. Del. 2021) ("The statute makes no distinctions with respect to the method of acquiring the claim."). The statutory term includes "mere passive event[s]," such as "inheriting a claim by operation of law." *Glen*, 7 F.4th at 336. Plaintiffs thus lack a viable Title III action if Escalon inherited, or the Estates otherwise obtained or gained possession of or control over, claims to confiscated property after March 12, 1996. *Id.* They plainly did.

Plaintiffs do not assert (and have never asserted) that the Estates' decedents continue to own the purported claims to confiscated property. Plaintiffs thus rightly concede that someone or something else possesses or controls those claims, having gained them either through inheritance (Escalon, as the only devisee named by the wills) or other "operation of law" (the Estates).[2] *Glen*, 7 F.4th at 336. And that person or entity could only have gained possession or control—that is, "acquired" those claims—after the decedents' post-March 12, 1996 deaths.

---

[2] Under Florida law, property rights are not suspended upon a testator's death—they "must be vested in some one." *Sorrells v. McNally*, 89 Fla. 457, 472 (1925).

Under this Court's decision in *Glen*, then, this Title III action fails for lack of a timely-acquired claim to property. *Id.* at 336-37; *see* Br. for Defts.-Appellees ("Response Br.") 16-18. This Court does not need to certify any question to the Florida Supreme Court to reach this conclusion. The precise status of the property claims under Florida law does not matter, because someone or something acquired the property claims when the testators died after March 12, 1996.

Indeed, Plaintiffs hardly dispute this view in their merits reply: they simply assert that *Glen* does not control because it did not address estates or personal representatives. Reply Br. 4. But *Glen*'s interpretation of Title III's term "acquire" of course controls a Fifth Circuit panel applying the same term. And that reasoning compels the conclusion that any person or entity that takes "possession or control" or otherwise "get[s] or obtain[s]" a claim to property, 7 F.4th at 336—whether she gets it "as her own" or not,[3] *contra* Reply Br. 4—has "acquired" that claim to property in the necessary sense under Title III.

---

[3] Plaintiffs have put forward the concept that a claim holder must acquire a claim "as her own" for purposes of assessing timely acquisition despite that language appearing nowhere in *Glen* or the broad definition of "acquire" it adopts. Rightly so, because the idea of obtaining something for one's own is part of a narrower definition of "acquire" that *Glen* did not adopt. *See, e.g.*, *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 933-34 (11th Cir. 2023) (Jordan, J., concurring) (collecting dictionary entries "distinguishing between gaining possession by any means, including passive inheritance, and gaining possession through affirmative effort"); *see also id.* at 937 ("conclud[ing] that § 6082(a)(4)(B) must be interpreted as written" to encompass inheritance).

Plaintiffs' position, in contrast, requires adopting the entirely unsupported view that *nobody* controls the alleged claims to property until probate concludes, and so those claims somehow remain subject to the testators' acquisition dates despite their deaths. Plaintiffs take this position even though they also admit that the Estates currently contain and will eventually distribute the testators' remaining estate property to Escalon, the Estates' only heir.[4] There is no basis in Florida law or Title III's framework for Plaintiffs' attempt to use (belated) probate to avoid Title III's timely acquisition requirement and this Court's controlling precedent. Response Br. 29-31. Nor would answering Plaintiffs' proposed questions provide any support for this meritless effort.

This Court can and should resolve this appeal based simply on the fact that any claims to property that may exist—whoever or whatever acquired them at the time of the testators' deaths—are not timely acquired, so the Title III action fails. Because deeper inquiry into Florida law is not required to reach this result, the questions posed by Plaintiffs are not determinative of the cause and do not merit certification.

---

[4] Further, under well-settled Florida law, no matter when probate concludes, Escalon will be deemed to have acquired the property claims at issue as of the date of the testators' post-March 1996 deaths. *See, e.g.*, *Sorrells*, 89 Fla. at 469, *Lumbert v. Estate of Carter*, 867 So.2d 1175, 1178-79 (Fla. Dist. Ct. App. 2004). Notably, no estate assets are currently subject to probate aside from the purported right to pursue Title III causes of action, indicating that the remainder of the testators' estates have either already passed to Escalon or were entirely void.

**II.    Federal and state law clearly answer the proposed questions.**

Even if this Court needed to look beyond *Glen* and the realities of this case to decide this appeal, it does not need to look to the Florida Supreme Court for its discretionary guidance. Florida law is longstanding and well-developed on both of the purported issues Plaintiffs raise. Its interaction with this Court's Title III precedents is also unambiguous. Indeed, that interaction means that any certified question would not present a clean question of state law; it would instead implicate this Court's binding interpretation of a federal statute—another compelling reason not to certify. Plaintiffs' efforts to show otherwise rely, like their merits briefing, on conflating claims to property with causes of action, misreading the probate court's orders, and misinterpreting Florida law. This effort also threatens to undermine Title III's statutory language and purpose, and should be rejected.

**A.    Florida law is clear that any purported claims to property vested in Escalon, as sole heir, when the testators died.**

Florida's probate code is unequivocal: "The death of the testator is the event that vests the right to devises unless the testator in the will has provided that some other event must happen before a devise vests." Fla. Stat. § 732.514. To vest means "1. To confer ownership (of property) on a person. 2. To invest (a person) with the full title to property. 3. To give (a person) an immediate, fixed right of present or future enjoyment." Vest, Black's Law Dictionary (11th ed. 2019). This definition of "vesting" fits neatly within this Court's definition of "acquire." It also describes

7

what happened to any purported property interests the Estates' decedents may have owned in confiscated property. Their wills devised all property to Escalon as sole heir, without condition. Thus, under Florida law Escalon "acquired" that property when the testators died—meaning she did so after March 12, 1996.

In arguing otherwise, Plaintiffs simply point to the probate filings stating that the Estates' only assets were "[r]ight[s] to pursue *a cause of action*" under Title III (with no mention of any ownership interests in property) and the probate court's orders authorizing Escalon as personal representative. Mot. 5-6 (emphasis added). That is, Plaintiffs rely on the unremarkable proposition that a personal representative may pursue cognizable causes of action (that is, legal claims) an estate possesses.[5] That proposition—and the probate court orders here—say nothing about whether the causes of action Plaintiffs listed as the Estates' sole assets are *viable*, including whether they satisfy Title III's element of a timely-acquired claim to property.[6] *See* Response Br. 19-24. Put differently, those orders say nothing about the very

---

[5] Of course, neither testator had a viable Title III cause of action at death because that cause of action was suspended.

[6] Indeed, the Florida code provision Plaintiffs cite, Reply Br. 6, makes the critical distinction between a cause of action or legal claim and the property on which that action is based. A personal representative may "[p]rosecute or defend claims or proceedings in any jurisdiction for the protection . . . of the decedent's *property*." Fla. Stat. § 733.612 (emphasis added). The question here is not whether Escalon, acting as personal representative, can prosecute a cause of action for the Estates, but whether the causes of action she has asserted here involve timely acquired *property* interests (*i.e.*, whether the purported cause of action is viable).

questions Plaintiffs want to certify. And they certainly do not create any ambiguity that warrants certification.

Instead, case law interpreting the relevant Florida probate provisions makes clear that a devisee "acquires" property in the necessary (Title III) sense at the testator's death. As *Rice v. Greene* reflects, for example, a devisee possesses or controls inherited property via a vested ownership interest such that she may convey title to it even before her title is perfected by probate. *Rice v. Greene*, 941 So.2d 1230, 1231-32 (Fla. Dist. Ct. App. 2006).

A long line of case law confirms the same reading of Fla. Stat. § 732.514 (and its predecessor statute)'s unambiguous language: that property rights vest in a devisee as of the date of the testators' death, and that this date of acquisition controls regardless of when a will is probated. *See, e.g.*, *Sorrells*, 89 Fla. at 466-67 (confirming that Florida law "favors the early vesting of estates" and that "[t]he overwhelming weight of authority is to the effect that devises vest at the death of the testator, unless there is a clear intent to postpone the vesting."); *Estate of Richard v. Comm'r*, 2012 Tax Ct. Memo LEXIS 174, at \*12, \*19 (U.S.T.C. 2012) ("[C]ourts have consistently held under [Fla. Stat. § 732.514] and similar statutes that title to property bequeathed in a probated will is deemed to have passed to a devisee upon the death of the testator, regardless of when the will is probated."). Probate under Florida law, thus, does not create property interests; rather, it simply confirms them,

with vesting dating to the death of the testator. *Estate of Bagley v. United States*, 443 F.2d 1266, 1269 (5th Cir. 1971) (examining § 732.514's predecessor statute); *see also Pournelle v. Baxter*, 151 Fla. 32, 37 (1942) ("[W]hen he becomes a beneficiary under a will the title *ipso facto* vests in him upon the death of the testator."). In this case, Escalon is the sole unopposed and unconditional heir, leaving nothing further to confirm. Probate is open solely to try and prop up invalid Title III claims.

Given this clarity, there is no basis to certify any question to the Florida Supreme Court about whether heirs acquire property upon the testator's death.

**B.    Florida law is clear that the Estates acquired the property claims as of the time of the testators' deaths if Escalon did not.**

There is also no uncertainty under Florida law about the ability of estates to acquire property in the necessary sense, meaning that the Estates would have "acquired" any purported property claims that did not vest in Escalon at the time of the testators' deaths.

Plaintiffs' only basis for disputing this is their assertion that estates are just aggregations of a decedent's property and "[p]roperty cannot acquire itself." Reply Br. 9. There is zero support for this assertion, and Plaintiffs cite none.

In contrast, federal and state law make clear that estates can "acquire" property within Title III's meaning. Again, this Court reads Title III's term "acquire" broadly to encompass any manner of transfer that results in an entity

gaining "possess[ion] or control" over or otherwise "get[ting] or obtain[ing]" the claim to property. *Glen*, 7 F.4th at 336. Under Florida law, an estate takes control of a decedent's assets at their death, "in the twinkling of a legal eye." *Sharps v. Sharps*, 214 So.2d 492, 495 (Fla. Dist. Ct. App. 1968). Those assets then "belong[]" to the estate, *Depriest v. Greeson*, 213 So.3d 1022, 1026 (Fla. Dist. Ct. App. 2017), because the estate is an entity separate from its testator that controls the testator's assets and can "[a]cquire or dispose of" the same throughout probate, Fla. Stat. § 733.612(5). Such assets are thus "acquired" within the broad meaning of that term at the time of a testator's death.

To adopt Plaintiffs' unsupported view of an estate's capacity to "acquire" assets would undermine Title III—a federal statute—and run contrary to both that federal law and Florida precedent. Response Br. 29-31. This Court has already decided what "acquire" means under Title III, and relevant Florida statutory law, case law, and treatises confirm that estates are separate entities that "acquire" a testator's assets at the time of death within Title III's meaning. Response Br. 25-29. There is no basis for certifying this issue to the Florida Supreme Court to verify what is already evident under federal and state law.

## III.    Certification is not warranted under this Court's *Shevin* factors.

Even if state law permitted certification in this case (and it does not, as Plaintiffs propose to certify non-determinative questions on which the law is clear),

this Court must still apply its *Shevin* factors to decide whether certification is warranted. These factors weigh strongly against certification.

### A.     The questions are not close and ample law exists.

The "most important [*Shevin*] factor" is "the closeness of the question and the existence of sufficient sources of state law." *Bloom v. Aftermath Pub. Adjusters, Inc.*, 902 F.3d 516, 519 (5th Cir. 2018) (citation omitted). As discussed above, there is nothing close about the proposed questions. Under both Title III and Florida law, the answer to both is clear. And there is more than sufficient Florida law (not to mention relevant federal law and precedents that control), as the Florida statutes, case law, and treatises cited above are all on point and fully resolve the issues. This law includes precedent from the Florida Supreme Court itself. This "most important factor" weighs strongly against certification.

### B.     Comity is not relevant in this federal question case.

Another factor is "the degree to which considerations of comity are relevant in light of the particular issue and case to be decided." *Swindol*, 805 F.3d at 522. These considerations do not play a role in this action under Title III, where the questions Plaintiffs seek to certify are inextricably intertwined with federal law (and this Court's binding interpretation of the same).

Moreover, this Court's decision on appeal will have no impact on Florida's probate code or process. Contrary to Plaintiffs' assertions, there is no conflict

between the underlying probate court orders and the decision below, nor will this Court's affirmance impact Florida probate law other than to confirm its straightforward role in this action. In fact, it is *Plaintiffs*' effort to circumvent Title III and Florida's longstanding vesting rules and treatment of estates that threatens to undermine the Florida probate system. Thus, Florida's only interest in this matter lies in having it quickly and correctly resolved by affirmance.

### C.    Certification will cause unwarranted delay.

Finally, this Court looks to the "practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court." *Swindol*, 805 F.3d at 522. This factor also weighs against certifying. This straightforward appeal controlled by existing precedent is now fully briefed and, in the normal course, is likely to be resolved within months; it has already been pending in pre-litigation and active litigation for over four years. Certifying Plaintiffs' proposed questions will unnecessarily and significantly delay that process, certainly by months and potentially by more than a year. Nothing justifies that delay, especially when courts have consistently resolved the timely acquisition question raised here in the same way, against similarly situated plaintiffs.

Further, given that the questions raised here are so intertwined with federal law, specifically this Court's controlling interpretation of Title III's term "acquire,"

there is no guarantee that questions can be effectively posed to or answered by the Florida Supreme Court. This Court should not certify questions to a state court that will inevitably require it to wade into the federal courts' purview—that is, a federal statute that has been consistently interpreted by multiple federal courts, including this one—especially when the relevant state law issues are already clear.

In sum, certification is not justified because the proposed questions are not determinative, and there is controlling precedent resolving both. Even if Florida's requirements for certification were met, this Court's multi-factor *Shevin* test comes out strongly against it.

## CONCLUSION

For these reasons, this Court should deny the motion and proceed to resolve the merits of this appeal.

Dated: September 25, 2023

Respectfully submitted,

*/s/ Kathryn M. Barber*
Kathryn M. Barber
Alex J. Brackett
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1227
F: (804) 698-2227
kbarber@mcguirewoods.com
abrackett@mcguirewoods.com

*Counsel for Appellees Trafigura Trading LLC, Trafigura Group Pte Limited, and Trafigura Pte Limited*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 25, 2023, the foregoing was filed with the

Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF

system, which will serve all counsel of record.

*/s/ Kathryn M. Barber*
Kathryn M. Barber
MCGUIREWOODS LLP

# CERTIFICATE OF COMPLIANCE

1.    This opposition complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,467 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.    This opposition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman style.

/s/ Kathryn M. Barber
Kathryn M. Barber
McGuireWoods LLP

16